McDONALD v. FIRST NAT. BANK OF KANSAS CITY et al.

(Circuit Court of Appeals, Eighth Circuit. April 21, 1902.)

No. 1,613.

1. FRAUDULENT CONVEYANCES—TRANSFER OF BANK STOCK—EVIDENCE CONSIDERED.

Evidence *held* to support a finding that a transfer of stock in a national bank was merely colorable, and that a sale of the stock on execution against the original holder conveyed a good title thereto.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

Henry L. McCune (Charles L. Dobson, on the brief), for appellant.

Henry D. Ashley and George P. Miller (William S. Gilbert and Denton Dunn, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. The First National Bank of Kansas City, Mo., filed its bill of interpleader setting up that John M. W. Pratt and L. E. McDonald each claimed to be the owner of the same 50 shares of the capital stock of the bank and the dividends due thereon, and praying that they might be summoned in and required to assert and litigate between themselves the question as to which of them was the owner of the stock and the unpaid dividends thereon. The parties appeared and set up their respective claims to the stock. John M. W. Pratt, for convenience hereafter designated as the plaintiff, claimed to have acquired the title to the stock under and by virtue of execution sales thereof on two judgments, one for $1,696, and one for $5,375, recovered by him in the circuit court of Jackson county, Mo., against Charles W. McDonald, who prior to 1892 was admittedly the owner of the stock. For the fraudulent purpose of escaping the payment of alimony to his wife, whom he expected would procure a divorce, C. W. McDonald transferred the shares of stock in controversy, with shares of the capital stock of other national banks, to the plaintiff, and later they were transferred to L. E. McDonald, for convenience hereafter designated as the defendant, who claims to have purchased the same from the holder thereof, and the shares now stand on the bank stock register in his name.

In the view we take of the case, it is not necessary to go into the history of the transactions between the plaintiff and Charles W. McDonald relating to the shares of stock in controversy in this suit and the shares of stock of other national banks concerning which they had dealings. It is enough to say that, as a result of these transactions, it is, for the purposes of this case, conclusively established by the judgments in the state court that Charles W. McDonald became the debtor of the plaintiff in the sum of the two judgments recovered against him. It is equally clear that, if when the shares of stock in controversy were attached and sold they were in fact the property of C. W. McDonald, then the plaintiff is the owner of the same by virtue of his purchase thereof at the execution sale.

There is a great deal of testimony relating to the alleged purchase

116 F.—9

of the stock by the defendant, all of which has been read by every member of the court and duly considered. Without unduly protracting this opinion, we can do no more than state our conclusions upon the facts. Under the arrangement between the plaintiff and C. W. McDonald, the latter was the real owner of the stock all the time, although a certificate therefor had been issued in the name of the plaintiff. At the written request of C. W. McDonald, the plaintiff delivered the certificate of stock which he held, indorsed in blank, to the bearer of a letter from C. W. McDonald, in which the bearer of the letter was designated by the name of Robinson. C. W. McDonald is a cousin of the defendant, and had been the defendant's guardian. They had known each other intimately nearly all their lives, and had been associated together in the banking business. At the time of the alleged purchase of the stock, in 1895, the defendant was cashier of a bank at Morristown, Ind.; from 1881 to 1895, the date of the purchase of the stock, his monthly salary ranged from $30 to $75 per month; C. W. McDonald occasionally visited the defendant and his mother and sister at Morristown, Ind., and when he did so always stayed at the defendant's house; the defendant says he purchased the stock from one Robinson, in Morristown, in September, 1895, paying therefor $10,000 in cash; that Robinson was a broker in Chicago, and came from that city to Morristown to sell him the stock; that he never saw Robinson before or since, and does not know his address in Chicago; that payment for the stock was made in currency in the back room of the Morristown bank, when no one but the defendant and Robinson was present. His account of how he came to be possessed of $10,000 in money at that time is, to say the least, extremely unsatisfactory. The man figuring in the transaction as Robinson is not produced as a witness, and seems to be unknown to all. It is shown that C. W. McDonald wrote letters and orders about this stock, and signed them sometimes "George C. Robinson" and sometimes "C. H. Robinson."

We cannot escape the conclusion from the evidence that, if Robinson is not a myth, he was the mere cat's-paw of C. W. McDonald, and that wherever his name figures in the transaction it stands for that of C. W. McDonald; that when the plaintiff delivered the certificate of stock indorsed in blank to "Robinson" the delivery was in fact to and for the use of C. W. McDonald; that no bona fide sale of the stock was made to the defendant; and that the defendant at no time had any right, title, or interest in the stock other than to hold it in his name in trust for C. W. McDonald, for the purpose of enabling the latter to defraud those to whom he was, or expected to become, indebted.

The decree of the circuit court is affirmed.